Carr, J.
If the instruction given by the circuit court to the jury, stated in the second bill of exceptions, was correct, that is decisive of the case. Was it correct?
Two preliminary objections were taken to it; 1. that the plaintiffs, and those under whom they claim, had been in quiet possession of the mill for more than twenty years; and 2. that the legality of the erection, could not be questioned in this collateral way. To the first, two answers present themselves: 1. that this is a public right; Crenshaws v. The Slate river company: 2. that the twenty years possession must be adverse; Coalter v. Hunter. The occupation of these mills on the stream below, could in no way affect the Appomatox company in their use of the water taken into their canal far above. As to the other objection, that we cannot inquire here, whether the order of court authorized the building the plaintiffs’ mill; it must be recollected, that this case stands on ground very different from that of The Slate river company. The Appomatox had long been declared by law a public highway, and the rights of the riparian possessors, with respect to building mills Sic. modified and restricted. For the particulars on this point, I refer to my brother Green’s remarks in The Slate river *335 company’s case, 6 Rand. 267-9. The Appomatox company, under a public law, had erected their works, dug their canal, and taken out the water: for this, the plaintiffs, as millers, bring this action for an injury done to their mills: the defendants plead the very fact, that the order of court did not authorize the erection of this mill, and that therefore it is no legal mill; the plaintiffs take issue on this plea. Could it be wrong under this state of the pleadings, for the defendants to ask, or the court to give, instructions, as to the law of the subject ?
But were those instructions right? Wheeler, owning the island, moved for leave to build a mill on it, and not owning the opposite shore, moved to condemn an acre for an abutment for his dam : he got this acre condemned, and leave to erect his mill on his island. Did this authorize him to build the mill on the opposite acre, condemned for his abutment? or on a canal taken out on the north side of the river, and away below that acre ? I say, clearly no. The words have a distinct and definite meaning, and to that they must be confined. Suppose Wheeler, owning the island, had moved the court to condemn an acre on the opposite side, to build his mill on, meaning to abut his dam on his island; could the court have done it? where is the authority? The law expressly says, that the party applying to build a mill, must own the lands on which he means to build it. Wood v. Boughan, 1 Call, 329. Wilkinson v. Mayo, 3 Hen. & Munf. 565. A mill is a great public benefit,— a mill seat a valuable property; and to him who owns this, the law has given power to have an acre on the opposite shore condemned, to enable him by means of his mill to subserve the public interest. The very words of the law are “ any person desiring to build a water grist mill, or other machine, or engine useful to the public;” and, indeed, nothing but the public interest could justify the strong handed measure of taking from a citizen his own property, whether he will or no. But if one own the land where the mill is to be built, he owns the mill seat; and it is his privilege to *336 condemn the acre opposite, not the privilege of the opposite owner, to condemn his mill seat. The county court, -therefore, in this case, neither meant to give, nor had power t0 give, or to sell, to Wheeler, an acre of Tabb's land, to build his mill on. If, then, under this order, Wheeler had 77 built his mill on the condemned acre; I should have said he nQ authority to do so. But it is worse than this : under the order to build on his island, he has taken water out, on the north side, by a canal cut through the land of Tabb, for some distance below (we are not told, whether a quarter or a half mile, or a mile) and has built his mill on this canal. If this is justified by the order, there is no locality at all about it. There is the dam to be sure, where the order designates; but the race may be as long, and the mill as far off, as you please. It must be observed that the inquest says, a mill built at the place set forth in the petition, will not damage any house, overflow any offices, or cause any of the other mischiefs which the law guards against, but says nothing of the effect upon the property or health of the citizens, of carrying this water through the canal to the mill where it was actually erected. We all know how often lands are injured by carrying water through them, and how often a canal affects the health of those living near it. Do not these considerations alone, shew, that a scite which was never viewed, and a canal that was never contemplated, by the jury of inquest, cannot be authorized by its report? I say, then, that the proceedings of the county court, did not authorize the digging this canal, and building this mill where it stands; and that the instruction of the circuit court on this point, was correct. I think the judgement should be affirmed.
Cabell, J. concurred.
Brooke, J.
The merits of this case depend on the pleadings, and the several instructions given by the circuit court to the jury, at the trial. The two material issues joined in *337 volve the inquiries, 1st, Whether The Upper Appomatox company, under the acts of 1795 and 1796 incorporating it, and the several acts referred to in the first bill of exceptions, was authorized to take the water of the river for the purpose of navigation, and also to use the surplus water incidental to the use of it for navigation, for milling purposes? and 2ndly, Whether Wheeler, under whom the plaintiffs claim, built and established his dam and mill, in pursuance of the order of Chesterfield court?
The Appomatox, it must be premised, had, before the order of Chesterfield court authorizing Wheeler to build his mill, been declared a navigable river by law. This feature of the case takes it out of the decision of this court in the case of Crenshaws v. The Slate river company. I think the instruction of the judge to the jury, which belongs to the first inquiry, was perfectly correct. It was, in substance, that the rights of this company, under the several acts referred to, were paramount to the rights of the plaintiffs under the order of Chesterfield court. The jus publicum, in the navigation of the river, expressly granted by those acts to the company, for the legitimate purpose of facilitating its navigation, gave to the company, for that object, all the water of the river necessary for the purpose, and also all the surplus water incidental to the use of it for navigation, for milling purposes. Though our institutions and laws are justly tenacious of private rights, yet the ruling principle of them is, that, when private rights come in conflict with public, the former must yield to the latter; in which event the legislature alone is competent to make compensation. The public right to the navigation of the rivers of the commonwealth, cannot be weaker, than the public right to a highway on the land ; and it will be found, on an examination of our legislation on that subject, that the right of way on the land, has uniformly been asserted, notwithstanding the grant of the land, in the broadest terms, and that without compensation to the proprietor, until a very late period, when by statute the writ of ad quod damnum, was provided in that *338 case. Nor should I think it material, but for The Slate river company's case, whether a river has or has not been dedared navigable by law. The common law on the subject, as understood in England, mixed up, as it is, with the preroSatave °f the crown, is not to be so understood here, its peculiar beauty is, that it adapts itself to the rights of parunc¡er evepy change of circumstances. So far as it recognizes the prerogative of the crown, it was abolished by the revolution; and, even where that is not the case, it is not always applicable to the same objects here, as in England; as was said by some of the judges of this court, in the case of Lightfoot v. Colgin, 5 Munf. 42. Findlay v. Smith, 6 Munf. 134. Therefore, even the grants of the crown before the revolution, are not now to be interpreted, as before, when the prerogative was in full force here. The public right to a way on the water, or the land, is a trust to be administered by the government for the community at large; never to be destroyed, but to be so administered as to facilitate the enjoyment of it by the public; as it was administered by the charter incorporating this Appomatox company. It cannot, in its nature, be the subject of a grant to an individual or corporation but for that object, since it cannot be enjoyed as private property in any other mode. I know, that there are rivers and streams in England, in which individuals have a property by grants from the crown, as to which the public right to a highway on them, has ceased to exist. Lord Hale, in his tract de jure maris, p. 8. 9. is not very precise, when he says, there be some streams and rivers that are private, not only in propriety and ownership, but in use, as little streams or rivers that are not a common passage for the king’s subjects. He does not tell us, how these little streams or rivers became private property. We can only infer, that they became so by force of grants from the crown; especially, as he tells us also, that there be other rivers, as well fresh as salt, that are of common or public use for carriage of boats and lighters, and these, whether they are fresh or salt, whether they flow and reflow or not, *339 are, prima facie, publici juris. However this may be by the common law in England, I think the doctrine which gives private property in rivers, has no application here, for the reasons before stated. In considering this point, I can perceive nothing in the grants under our legislation, that authorizes the distinction, taken by Hale, as to the streams and rivers of this commonwealth; nor do I think the broadest of our grants can be so construed. Even the patents under the act of 1705, in which the form of grant is given, and in which rivers, waters, marshes &c. are specified, ought not to be so construed as to deprive the people of this commonwealth of the jus publicum in the navigation of our rivers. In 3 Kent’s commentaries, p. 333. it is said the doctrino was asserted in the state of Jersey, that the soil of its navigable rivers, and the waters also, was private and not public property, that passed in feesimple from the original proprietors under royal patents to the present occupiers and grantees; that the title was originally in the king, by right of discovery, according to the public law of Europe; and, upon that foundation, that the proprietors of land on rivers and waters, navigable and innavigable, have, immemorially, exercised the right to the soil, and to several fisheries; but this claim was decided to be subject to the jus publicum in the navigation, and also to the regulations of the legislature for the protection and passage of fish. And this too, under a grant to the duke of York from the crown, as comprehensive in its terms as it could well be, even broader than the grants under our land law of 1705, the form of which has been since changed by statute. But, in the present case, we have no such grant before us. And how it can be inferred, from the several statutes concerning mills, that the public right in the navigation of the rivers and streams, on which mills are by those statutes authorized to be erected, passed to the mill owners, I cannot perceive. One of the earliest of those statutes, the act of 1734, ch. 2. 4 Hen. stat. at large, p. 53, 4. expressly and carefully guards the right of way over mill dams. I think, there is nothing in *340 the statutes authorizing the county courts, upon application to them, to grant leave to erect dams, and to build mills; on the contrary, the charge prescribed by them to be given to the jury, who are to estimate damages &c. requires, that they are to inquire, whether navigation will be obstructed, or the passage of fish; and provides the remedy in such cageg^ ^ ¿¡rect|ng s]0pes &0, And, though mills are a great public convenience, yet as that convenience is of an intirely different character from the jus publicum in a highway, the latter, on the construction of the statutes, ought not to be made to yield to the former.
On the second head of inquiry, I concur with judge Carr. I think the defendants had a right to question the authority of the plaintiffs, or of Wheeler, under whom they claimed, to erect their dam or mill under the order of Chesterfield court; the more especially, as the defendants had a right to dispose of the surplus water for milling purposes, which would be materially affected in value, by the mill of the plaintiffs. I think the judgement must be affirmed.
Tucker, P.
I am of opinion, that the instruction given by the circuit court upon the trial of this cause, as set forth in the second bill of exceptions, was erroneous. That instruction was vital to the plaintiffs’ action, though it determined but a single insulated question, not affected by the various interesting matters, which have been evolved in the discussion here, and very probably, were fairly before the circuit court.
The action was brought by the plaintiffs in error, to recover damages for a diversion of the water of the Appomatox from their mill, by the defendants. To support the allegation in their declaration, they produced the record of proceedings in the county court, giving leave to build the mill in question, and to erect their dam for its use. It was proved, that the mill was forthwith erected, and has been quietly occupied for twenty years, by the plaintiffs and those under whom they claim. But the plaintiffs, or those under *341 whom they claim, having built the mill house and dug a mill race to it, on the lands of Tabb, on the main land opposite to Wheeler’s island, instead of on Wheeler’s island, as authorized by the order of the county court, the circuit court, on the motion of the defendants, instructed the jury, that, under the order of the county court, Wheeler had no right to build his mill on any other land than his own, and to take water from the river for such mill; that the mill in question, was, therefore, not legally established, and so the plaintiffs were not entitled to recover.
Although I think it clear, that an order to build a mill on a particular scite, does not authorize the erection of the mill house at a spot so essentially variant as neither to possess the advantages, nor to avoid the mischiefs, which the county court may have had in contemplation, in authorizing the establishment; yet, upon mature reflection, I very much doubt, whether that question can be collaterally inquired into in this case; and, even if it may be, I am of opinion, that the defendants should have shewn, that the departure from the strict interpretation of the order of court, was so material a departure as to deprive the plaintiffs of the use of the privilege which had been granted them. No such evidence was adduced; on the contrary, the acquiescence of twenty years very strongly evinces, that the change of scite of the mill house, was not considered as material, or as injurious to any one, or inconvenient to the neighbourhood.
The question would have been very different, had it appeared, that the dam was not erected where the county court authorized it, or that it had been abandoned, or that a new and unauthorized dam had been erected elsewhere. For the location of the dam is, indeed, required by law to be ascertained, but not the scite of the mill house. The dam is not only, as to this matter, the principal, and the mill house the accessary, but it is, moreover, as far as appears in this case, the only matter with which the defendants had any thing to do. Had their canal been so located, as to have required the removal of the house, then it might have *342 become a question whether the plaintiffs had had a right to t t i build a mill house there. But, in the case as it appears in this record, the location of the mill house was not a matter in which they had any concern. The question between the parties, is, merely, whether the plaintiffs had a right to have the water running to their dam ? If they had, and the de^encjants jjaye d¡verted it, without lawful authority or superiour right, they are responsible.
Nor is the instruction supported by the pleadings. The plea is that the mill and dam were not erected according to the order, and the essential part of the plea, in reference to this contest, is that the dam was not so erected. If that had been proved, then indeed the court might have instructed the jury, that the plaintiffs were not entitled to their action; but the mere proof as to the mill house, did not sustain the plea, and the instruction was therefore improper.
If I am right in this opinion upon the second bill of exceptions, it is unnecessary to go into an examination of the various questions submitted by the other. For, although it is true, that this court will affirm a judgement notwithstanding an erroneous instruction, against the plaintiff, provided it appears that upon the whole matter the plaintiff is not entitled to recover, yet I do not think the facts are sufficiently stated to enable this court to pronounce definitively upon the rights of the parties. I am, therefore, of opinion, that the judgement should be reversed and the cause sent back for a new trial.
Judgement affirmed.